I'm sorry. Oh, I'm sorry. Okay. I didn't realize that. I should look at my list. U.S. v. Johnson, case number 19-4000. Counsel? Good morning, Your Honors. I am This court, in an earlier panel decision where Your Honor wrote the opinion, remanded the case for sentencing after affirming Mr. Johnson's conviction and then remanding it without any limitation as to what could be considered. And we presented on below, at the resentencing, something that had not been resolved by this court on appeal, on the merits. And that was, we said that nobody had previously taken into account the large amount of gain that had been generated by these transactions. Only the loss of $1.6 million from the various chargebacks, but not the gain from those same transactions, that same body of transactions. The record, which is unarguable in this case, is that there were 1,941,000 credit card transactions. This is not some hyperbole that defense counsel made up. This was in the government trial exhibits. There was a big stack of trial exhibits that showed every single merchant purchase, credit card purchase. There were 1,900,000 of them, plus a few more. Of those, there were 66,000 and some of those credit card transactions where the customer didn't like them and therefore called up their credit card company and said, I'm charging this back, take this charge off my account. So let's back up because I don't think you do this in your opening brief. And I think the most important question here is, I understand your position that we remanded it, we didn't indicate for what type of resentencing, we just remanded for resentencing and we found one error. And so your position is that the district court had the discretion to conduct a de novo resentencing on this issue at least. The problem I have is, and what you don't seem to address in your briefing, is why did the district court abuse that discretion here? The district court judge seemed to clearly understand that it could potentially conduct a de novo resentencing on remand, but it gave specific, very specific reasons why it wasn't going to do that. What, how was that an abuse of discretion? And I need you to discuss the reasons the district court offered and why that was an abuse of discretion. I think there's several and we did our best to try to address those in opening brief and in a reply brief. First, his clear reasoning for not doing it again, for not holding a resentencing, was that what had been determined was the law of the case. I've got the district court's opinion and he said that the original judge who now is recused, Judge Neffer, had based the original determination on his extensive knowledge of the way the credit card system worked. This had been a massive case, massive, and Judge Neffer had sat all the way through, I understand, that Judge Neffer was in a unique position to assess the evidence and estimate the amount of the loss to the banks that had been suffered. And he said that he, Judge Benson, should not replow that ground, although he understood that he could. And then he proceeded to sentence your client, if I recall correctly, to a number of months below the revised guideline on remand. Yes. How was that an abuse of discretion? Because it wouldn't have been replowing any of the ground that Judge Neffer had covered because Judge Neffer simply didn't look at the same exhibits that showed the loss, which is the 66,000 chargebacks at $25 loss. You don't have to challenge that to do what we asked the court to do. Even if it wasn't a replowing on that particular issue, the court certainly had the discretion not to consider a new issue that what you're saying is it certainly could have been raised before. All of the evidence was there. Well, the courts, this circuit has long said that on remand, the court may, the sentencing court may consider evidence that could have been considered but wasn't. The reason we contend that this is an abuse of discretion is that we presented something that was very discreet, very definitive. No one counted the gain. Yes, when we tried to, when this was done on the first appeal, Your Honor, you correctly ruled that it had not been raised below. It was not raised in the opening brief. It was only hinted at in the reply brief, which is much too late and doesn't give any fair ability for the court, for the government to respond. Now we're back. We had one set of documents which were already in the record. Those documents showed that there were $4 million worth of fees generated by the same people that had, the same banks that had incurred the loss. And the banks don't do this for free. They don't fund our credit cards for free. They do it for a little piece off of every transaction, and those developed into $4 million. We went back to the court, to the sentencing court, and we said, all we want you to do is to consider gain, which this court always does. This court has reversed several cases, several cases. We cited them in our brief, where you must take into account the gain. It's the net loss that is determined. Here, you know our position. The arithmetic is clear. There was no loss here. There was a monumental gain. So now we're back at the sentencing court. All bets are off with respect to what hadn't been covered before. This court has said repeatedly that on remand you can consider anything that could have been considered below. We had one thing we wanted considered, and that was this. It would not have taken a re-plowing of all of the things that went on in trial. This was a large and messy trial. Mr. Johnson had participated in it pro se. It was a very difficult trial, but it had nothing to do with loss. And here's why it had nothing to do with loss. The judge, at the request of the judge, correctly said, you don't have to show loss to prove guilt under the statutes involved. You have to prove other elements. Therefore, on the government's motion in Luminae, which they invoked, we cite in our brief, about 21 times during the trial, your honor, we don't have to get into loss here because that's not, we don't need to prove that. Okay, so he didn't cover it during the trial. During the sentencing only, he said this is the cost per charge back. There's 66,000 charged back. Therefore, there's $1.6 million of loss. True, if you assume the $25. Okay, let me stop you there for a second. So as far as that goes, he makes that decision, and that's affirmed, right? Yes. That was affirmed. Okay, and then you go back and basically you're arguing about the same thing with a different, a slightly different theory, that the loss is different because you've got to count these gains, put offset gains and losses, right? Yes, I would. That's correct. I mean, in the simplest terms. And so, I mean, don't you have a saying it was an abuse of discretion was already ruled upon and affirmed. I mean, isn't that a problem for you that, I mean, maybe your approach was better, but you've already got a court that says the other way was fine. It was $400, it was $4 million better. So yes, it would have been better. It's better for better for you. But I mean, the other approach, you've already got this court saying that that was fine. But Your Honor, I respectfully urge you to reconsider the notion that this was ruled upon. Nobody talked about gain. All they said. Well, they didn't rule on your theory. They ruled on the loss issue. They ruled. It's the same issue, different theory. Well, it's they ruled on the part of the net loss issue, which was how much did this cost these people in different loss issues. Right. But on the last one, which you ruled on. We talked about the gains and we said that you'd waived the argument. So that waiver, it seems to me, allows and in fact invites the sentencing court to say, okay, you're now back here. So what did you have to say about gain? Can you point to me any authority that says that when we say that you waived an argument by and we refuse to consider it on appeal, a factual argument, can you cite me to some authority that says that that ruling by us invites invites the district court, in fact, encourages the district court to to think about that issue now on remand and so that you can bring it back up and do it right the second time. I can't think of a case that addresses it that way. Doesn't that in fact encourage people not to bring arguments if they think they're a little wobbly and thinking they might get a second bite at the apple? Your Honor, no. I've been at this podium a lot in various different circuits. I would never hedge my bet on the off chance that this court was going to remand and I'd get a second shot. So no, you take your shots when you can. This was it. And if you look at the opinion in the in the initial case, the counsel were chastised 17 times for failing to do something right to preserve the record. So in that circumstance it goes down below and we don't have any other than the general sense that you can consider anything even if it wasn't considered before and the Rosales-Morales case which says look, if you have an error that looks like it's going to result in, in that case it was eight months for the double counting. The Rosales-Morales case doesn't have anything to do with this situation, at least I'm not seeing it, where we resolve a case on the fourth prong of the plain error standard and whether or not we remand. What does that have to do with this circumstance? I believe it teaches that the Supreme Court would find the course to be that if you're back down on a remand and you can show that something wasn't considered which this court normally insists upon considering and this court has reversed when it isn't considering, namely the gain that offsets the loss. In that circumstance, your honor, when it is the clear law of the circuit that that's the case and you go back down and it hadn't been considered before and this court had not said, oh no, there's no gain here. Instead this court said you waive that and frankly all that was said in the appellate record about that is a quote from the district court level where not Mr. Johnson but one of the co-defense counsels said everybody gained here. That is just not enough. We had a government exhibits. We showed four million dollars worth of gain. This results in three years additional sentencing. In that circumstance and where there wasn't a mandate, don't consider that because we've already ruled on it. Only consider the two points or whatever else the court would have directed. Given that it was open-ended in that regard and given the striking loss, we submit that it is an abuse of discretion because his basic finding, your honor quoted the reasoning that he gave but he said that the legal basis for the reasoning was that it was law of the case. That's what he said. I'm not going to do it because it's law of the case. It's not law of the case. That's flat wrong. Law of the case has to do with law, not facts. Sentencing is a bit amorphous. As you all said, it only has to be a reasonable approximation for this court not to second-guess the judge on the determination. So I respectfully submit, your honor, that it is an abuse of discretion in this striking circumstance that four million dollars and three years of a man's life was just simply dispensed with because of law of the case. Unless you all have some questions, I've got just a little bit of time. I'd like to reserve it for you both. Sure, certainly. Thank you. Good morning, your honors. May it please the court. I'm Ryan Tenney and I'm here on behalf of the United States. As you know, we spent the bulk of our brief discussing the mandate rule and the law of the case. Judge Benson seems to have approached it. He accepted briefing on it. He referred to the law of the case. But let me put that aside for just a moment and make something of an initial point which seems to track some of the questioning. This court has long held that in the remand scenario like this one, that while a district court is ordinarily permitted to receive new evidence or arguments, it's not required to do so. Instead, as we've laid out in the carryover paragraph on pages 61 to 62 of our brief, a number of cases, including United States v. Moore, United States v. West, and the Dutcher decision have all recognized that this is a discretionary decision by the district court. This language from Moore, I think, exemplifies this. It says that the court has discretion to decide, quote, not to entertain new arguments and evidence, but to instead simply, quote, simply rely on the original briefing and arguments. So even if you view this case in the terms presented by Mr. Johnson, I mean, he doesn't discuss the law of the case in his opening brief until his request for argument, actually. But even if you view this simply under the prism, the separate prism of the resentencing de novo doctrine on its own terms, then he's still not entitled to relief. And the reason he's not entitled to relief is he has to show that the court abused its discretion. And to analyze it in that framework, we have to be clear about what decision is actually up on review here. The decision that's in front of you is not the loss decision. The decision in front of you is Judge Benson's decision to not reopen litigation on the loss decision. That's the decision that's on appeal, and that's the place where he has to show an abuse of discretion. What if we determine that Judge Benson erroneously felt he was constrained by the law of the case doctrine? What happens then? Yeah, I think that there's two different paths here. I think they overlap, and I think they can both get you to the same place. There's the law of the case path, and then there's the separate abuse of discretion path that you've recognized in the remand or the resentencing de novo cases. They're both getting at the same sort of underlying premise, finality, respect judicial economy, and so forth. But even if you say law of the case doesn't apply here, he still has to overcome that first hurdle, which is he's got to show that it was an abuse of discretion under the resentencing de novo cases. Well, is it abuse of discretion if Judge Benson only relied on law of the case? And I think that's a question. And if he legally erred and the mandate rule or law of the case does not bar resentencing of at least all of the aspects of the argument, is that an abuse of discretion because he relied on, he erred in relying on the law of the case? Well, no, because the procedural posture would have been clear to him. It was before him on a remand from a ruling from this court. The parties had briefed and invoked and discussed the resentencing de novo doctrine, so he knows that the resentencing de novo doctrine is in front of him. Everybody's discussing finality and whether he's required to reopen it. And so yes, there's a sort of legal labeling question. Is this law of the case or is it resentencing de novo generally? But he's thinking about all of these concepts. We've briefed it in our opening brief both ways. I mean, admittedly, I spent most of my time on law of the case, but we did at the back end discuss this in terms of the discretionary authority as a separate issue. And if that's the easier way through this for you, then we're certainly not opposed to going there. And that, quite frankly, may well be the easiest way because if the question in front of Judge Benson is whether, as a district judge, he's required to entertain new arguments about an issue that was litigated originally and that was litigated on appeal and that was affirmed on appeal, the answer is no. And a large part of the reason is the abuse of discretion doctrine, how much deference it gives to trial courts generally. We've cited that standard in our brief. It's a well-worn path for this court. To show an abuse of discretion, you have to show that a decision was arbitrary or whimsical or And so the posture here matters. I mean, it matters a lot. This isn't just an issue that a party was raising for the first time because something about the remand had sort of made this relevant in a way that it had not been relevant before. Did you see anything in the transcript? Was there anything that indicated that Judge Benson somehow thought, and he's been on the bench a number of years, that if the law of the case or the mandate rule didn't prohibit him from considering the new arguments, that he was required to do so? I don't recall there being anything that specific. But in that instance, you could certainly affirm on this as an alternative ground. I mean, the affirm on alternative ground doctrine applies to legal decisions for which there's no, legal basis for which there's no new factual development necessary. And so he's clearly invoking his discretion to rely on Judge Benson. This would seem to fit comfortably within the parameters of the affirmative alternative ground doctrine, if that's the problem. Did you handle the sentencing? No, I did not. I mean, how did the U.S. Attorney's Office present this case below? I recall there being a lot of discussion about the law of the case and the mandate rule. I don't recall. I wish in the moment that I did, but I don't recall whether it was separately briefed as a resentencing de novo. I mean, these principles were discussed. Just a few more points on that. And I think that there is a carryover here. The question in whether you're viewing it as sort of a pure discretionary decision, or whether you're viewing it under a law of the case decision, the question is as much about opportunity as it is anything. I mean, Mr. Johnson, understandably, wants to point to what he perceives to be the errors, the net loss rule and the various errors that he's pointing to with respect to the fines and so forth. But the question in front of you under a law of the case scenario, or even under a resentencing de novo discretionary scenario, is as much about opportunity as it is anything. I mean, a litigant could always come back with new evidence, or could always come back with new arguments. I think this is one of the reasons that finality matters so much in this case. If the only thing that was required to overcome the preclusive effect of a prior ruling, or alternatively to require a district court to reopen an issue, was the presentation of new evidence or the presentation of new arguments, then you would be creating a mechanism, if not an incentive, for never-ending litigation just as long as they can keep prevailing on one issue. And the whole point of these doctrines, whichever one you're looking at, is to incentivize parties strongly to present everything they've got in that first instance. And so here he knows that originally. He knows that this is going to determine a large part of his sentence. He's got every incentive to present all the evidence that he has. If he wants to get expert testimony, he's got every incentive to do that originally. He loses. He comes to this court. He presents five different arguments. He's given expanded briefing. He presents all the arguments that he's got to allow him to come back and say, well, OK, I lost before, but now I've got more stuff to say. I've got more evidence and so forth. Any litigant can do that. And in a variety of contexts, you have held, I mean courts commonly hold, that parties can't do that. Just think about the way that 2255 proceedings work and procedural bars and so forth. I think most criminal defendants would tell you years after their appeal has been adjudicated that they still think that there's an error. And if they could just have one more crack at it, they could make a better argument or produce better evidence. And yet the procedural bar is routinely enforced. And you say, look, if you could and should have made that argument earlier, you don't get to now. And so that's what's going on here. Judge Benson's looking at this and he's saying, yeah, OK, you've got new experts. Sure. And you've got perhaps better arguments. But you could have made all of those earlier so I don't have to reply that ground. This is the litany of reasons, Judge Moritz, that you invoked. He just says, look, I don't have to reply that ground because it's already been decided. Let me back you up to the prior appeal. So in the original sentencing, the defendant put on certain facts to the court about the amount of the loss. And then the court has to then take those facts and apply a guideline. And it comes up to this court and we're asked to basically determine whether the court properly applied the guidelines. Is that a legal question? Is that a mixed question? The loss question is a factual question. The cases have treated as a factual question. There's something of a sufficiency kind of claim that he's making in Johnson 1. He's saying that based on the evidence there, it was not a reasonable estimate. But that has been treated as a factual question. But again, our point would be that if he had arguments to make there, he could have made them. He just hasn't pointed, I think, to any reason why he's entitled to ask the district court to essentially disregard what this court had just said about loss and allow him to make new arguments that he could have made and in some instances actually did make and that this whatever labeling you put to that, we think he loses. Happy to answer any questions. The issue of offset get discussed either in the testimony of the experts or otherwise in these proceedings before the remand. The interchange fee offset argument was not discussed in this court's opinion. Nobody raised it before the remand. I went back and read the briefing from Johnson 1 over the weekend. There's a sentence or two in the government's brief that discusses it. And there's a sentence or two that sort of indirectly gets at it in Johnson's brief. But those briefs are very long and they weren't, this was not a developed point now and it wasn't discussed in the opinion. And the experts didn't, it doesn't appear in the analysis made by the experts, there's no discussion by them of offsets in arriving at their ultimate $25 figure? He didn't present experts before the original sentencing. The experts come in on the remand and they then offer contrary opinions about the $25 amount. But again, our point, I mean, to put this in law, the case terms, I'm sensing from the court that you're not as inclined to go there, but there is at least sort of an overlay in the reason for the discretionary decision. And there's that language from the Intec decision, the whack-a-mole language, where it talks about preventing continued, preventing new arguments about old issues. I think that in terms of its rationale, that would be just as applicable to the discretionary authority on a re-sentencing de novo as anything, because that's what this is. This is a quintessential example of a party trying to make new arguments about old issues. It's true, to go to your question, Judge McKay, he doesn't present these experts before the original sentencing, but he knows the losses is the issue. He knows that he could present experts. He's never once claimed that he couldn't or was in some way prevented from calling experts, and he just chooses not to. So instead, he comes back the second time and says, well, now I'm going to try that. And that's what he can't do. Is the doctrine, are the doctrines of waiver or forfeiture applicable in this proceeding? Yes. On that issue? Well, the Dow Chemical decision specifically says that an argument or claim that was waived in an earlier proceeding may not be reasserted in a subsequent proceeding. So at least with respect to the claims that this court said were specifically waived, that would be the 5909 offset issue. That would be true. This court did not specifically say that the interchange offset argument was waived. It just wasn't fully developed or raised, so that wouldn't be applicable there. But the overall question of can he come back and make new arguments about something that he had already argued and lost on an appeal, that would then apply. Well, the offset seems to me so obviously an issue. I'm surprised that it doesn't appear anywhere in the analysis. We'll have to check the record. And it would appear to me to be obvious that somebody would raise that. Sure. And my response would be a systemic one. I mean, again, at the risk of repeating myself, parties can always come up with new arguments. But what we do is we give them a chance in the original proceeding. We give them a chance in the appeal. And then if they still want to claim later, well, my counsel is ineffective, then there's also a mechanism for that too. They can come in in the 2255. So if he wants to come in in a 2255 and say, and allege ineffectiveness, then that's a place that he can raise that. But what he's not allowed to do is go back on a remand after this court has thoroughly addressed loss and essentially just reopen that issue, or at least force the district court to let him reopen that issue to make arguments that even he is admitting he could have made. He's never once argued that he didn't have access to experts. He's even said from the podium today that much of his argument is based on trial to the extent that his arguments are about stuff that was in front of the district court originally. That's all the more reason that he needed to do it when he was up on appeal the first time rather than waiting. And so again, Judge Benson looks at this whole picture and says, you've already had your shot at loss. There's nothing unfair about saying that that was your shot and you lost on it. And I don't have to redo that. I should have asked this counsel counsel for the appellant, but at least we have your response before I give him a chance to respond to that issue. Okay. I'd be happy to answer any other questions with building along the case or any of the issues we've not quite talked about. Thank you. If not, we'll submit it. Thank you. Mr. Markham. Thank you. The answer is, let me reframe the question a little bit. Is there anything that inhibited the power of the appellant, the defendant in this case, from asserting issues of offset in the quarrel over the amount of the loss? At the first sentencing, the answer is, is that it could have been addressed. It was not. Nobody addressed it. And Your Honor, I have not read in the government's brief and I've not heard in the government's argument that the $4 million figure is wrong, that the evidence isn't there in black and white in its exhibit, which were admitted for the truth of matters asserted, including the $4 million. So the question is, if Your Honor's decided this on the we've determined that, then I'm going to lose. But it wasn't decided. It was simply omitted by everyone. Then the question becomes de novo. De novo means do it again. Presumptively, you do it again. So if you're struck, our argument is this, if you're struck with something which is not contested to be $4 million in three years of a man's life, and it's not contested to be anything that could have been on the first time, you don't do it. We respectfully submit that that is an abuse of discretion, particularly because what was relied upon was law of the case and that's wrong. One last thing. 2255 procedural bar has nothing to do with that. That's a rule. That's a law. You can't get around that. This is discretionary. So the question is, could Judge Benson have said, okay, $4 million, well, I'm going to hear that because that is a striking amount off of a man's sentence, and there's no reason not to, and that's why we call it de novo. And his reason for not doing it was that his reason, the refuge he had, not the refuge, but his basis was law of the case, and it isn't. You point out that the government hasn't really argued the substance of the new issue you attempted to raise at sentencing, and I just want to clarify, I don't presume you expect us, if we agree with your position that the district court erred here, I would think you would expect us to remand it for a determination of that issue. You don't expect us to decide this issue, loss issue, in the first instance, do you? I do not. Okay. Just wanted to clarify. Thank you. I'd be great if you could, but I do not. Thank you, Your Honor, for your time. Thank you. Counselor, excused, and the case is submitted. Thank you.